UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MARCOS ARREDONDO,<br><br>                             Petitioner,<br><br>        vs.<br><br>WARDEN FPC YANKTON,<br><br>                             Respondent. | 4:25-CV-04038-KES<br><br><br>ORDER FOR FURTHER BRIEFING |

## INTRODUCTION

Petitioner, Marcos Arredondo, an inmate at the Yankton Federal Prison Camp in Yankton, South Dakota, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  See Docket No. 1.  Respondent, the Warden of FPC Yankton, has filed a motion seeking dismissal of Mr. Arredondo's petition on the grounds he has failed to exhaust his administrative remedies within the Bureau of Prisons ("BOP").  Docket No. 8.

## DISCUSSION

A federal inmate bringing a claim under § 2241 to challenge the BOP's calculation of his sentence ordinarily must first exhaust his administrative remedies.  United States v. Thompson, 297 Fed. Appx. 561, 562 (8th 2008).  Exhaustion under § 2241 is not, however, a jurisdictional prerequisite.  Lueth v. Beach, 498 F.3d 795, 797 n.3 (8th Cir. 2007); Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).

The exhaustion requirement may be waived when pursuit of administrative remedies would be futile.  Woodall v. Fed. Bur. of Prisons, 432

F.3d 235, 239 n.2 (3d Cir. 2005); <u>Fuller v. Rich</u>, 11 F.3d 61, 62 (5th Cir. 1994); <u>Fraley v. U.S. Bureau of Prisons</u>, 1 F.3d 924, 925 (9th Cir. 1993). When the denial of the inmate's request for relief was based on an official agency policy, exhaustion has been held to be futile. <u>Ward</u>, 678 F.3d at 1045-46; <u>Taylor v. United States Treas. Dept.</u>, 127 F.3d 470, 477 (5th Cir. 1997). Where an inmate alleges the BOP's regulations themselves are unconstitutional, exhaustion of administrative remedies is excused. <u>Totaro v. Warden Fort Dix FCI</u>, 742 Fed. Appx. 596, 598 (3d cir. 2018); <u>Gallegos-Hernandez v. United States</u>, 688 F.3d 190, 194 (5th Cir. 2012); <u>Woodall</u>, 432 F.3d at 239 n.2.

Upon first reading Mr. Arredondo's petition, it was not entirely clear to this court what he was claiming. However, he filed a brief in response to this court's order for service and a brief in response to respondent's motion to dismiss in which his position has become more clear to the court. <u>See</u> Docket Nos. 5 & 12.

Mr. Arredondo's sentence consists of a term of imprisonment of 46 months which is *not* followed by any term of supervised release. <u>See</u> Docket No. 10-1. Mr. Arredondo posits that under the First Step Act (FSA), Congress has directed that a prisoner such as himself shall be given the opportunity to earn time credits to be applied toward his "pre release custody or supervised release." Docket No. 1 at 2.

Because Mr. Arredondo has no term of supervised release, he asserts that the plain language of the FSA requires the BOP to allow him to apply his earned FSA credits toward "pre release," which he asserts means a halfway house or home confinement. <u>Id.</u> However, Mr. Arredondo argues that the BOP

2

has implemented the FSA in a way that is contrary to this clear Congressional intent.  Specifically, if a prisoner such as Mr. Arredondo has no term of supervised release, Mr. Arredondo argues the BOP policy denies application of FSA credits toward pre release.  Id.

Mr. Arredondo cites to 18 U.S.C. § 3624(g)(1)(D), part of the FSA.  Under that provision, an eligible prisoner who (1) has earned time credits under the FSA; (2) who has a low recidivism risk during his term of imprisonment; (3) has had the remainder of his term of imprisonment computed under applicable law; (4) who has been determined the last two times he has been assessed to be a minimum or low risk to recidivate; and (5) has had a petition to be transferred to prerelease custody approved by the warden based upon the warden's determination that the prisoner does not pose a danger to society, has made good faith efforts to lower their recidivism risk through participating in programming or productive activities, and is unlikely to recidivate.  See 18 U.S.C. § 3624(g)(1)(D)(i).

A separate provision sets forth the criteria for application of FSA credits toward supervised release.  See 18 U.S.C. § 3624(g)(1)(D)(ii).  In the case of supervised release, the prisoner must meet the same first three requirements listed above ((1) through (3)), and then must show that the last time the prisoner was reassessed he was determined to be a minimum or low risk to recidivate.  Id.

The difference between application of FSA credits toward prerelease as opposed to supervised release is that the look-back period for reassessment of risk is two prior evaluations for prerelease but only one prior evaluation for

3

supervised release. In addition, prerelease requires a petition and a warden's determination as listed above (see part (5)), while supervised release does not require such a determination by the warden. Compare 18 U.S.C. § 3624(g)(1)(D)(i)(II), with 18 U.S.C. § 3624(g)(1)(D)(ii).

Mr. Arredondo argues that the BOP interprets and is implementing this statute pursuant to official BOP policy contrary to Congress' intent in the FSA. Specifically, he asserts the BOP is not allowing him to apply FSA credits toward prerelease because he does not have a term of supervised release following a term of incarceration. Respondent's declaration herein appears to support Mr. Arredondo's assertion as respondent's spokesperson writes: "Petitioner was not given a term of supervised release by the sentencing court and, therefore, cannot have FTCs[1] applied to reduce his sentence towards early release." Docket No. 10 at 3, ¶ 12. This requires further explanation as Mr. Arredondo correctly notes that § 3624(g)(1)(D)(i) seems to allow FSA credits to be applied toward prerelease *or* supervised release, not to supervised release only.

Respondent notably did not address the merits of Mr. Arredondo's petition in its motion, but addressed only the issue of administrative exhaustion. See Docket No. 9. Respondent specifically asked the court to give him an opportunity to provide briefing on the merits if the court did not find administrative exhaustion to be determinative. Id. at 11 n.5.

---

[1] Instead of calling First Step Act credits "FSA" credits, the BOP terms those credits to be "FTCs." See Docket No. 10 at 3, ¶ 8. For purposes of this opinion, the acronyms FTCs and FSA credits are interchangeable.

Respondent explains that requiring Mr. Arredondo to exhaust his administrative remedies will answer such questions as whether he is eligible to earn FSA credits, what is his PATTERN score, what programming the BOP determined he needs, what programming has he completed, and so on.  Id. at 12-13.  But some of these facts are already known to respondent.

For example, respondent's spokesperson says in his declaration that Mr. Arredondo is eligible to earn FSA credits and that his PATTERN score has been determined.  Docket No. 10-1 at 3, ¶¶ 8-9.  The declaration also establishes that, as of the date the declaration was made, Mr. Arredondo has earned 143 program days which equates to 40 FTC days.  Id. at 4, ¶¶ 14-15.  Respondent would not be crediting Mr. Arredondo with earning 143 program days if he had not successfully engaged in programming that has been approved for his criminogenic needs.  See 18 U.S.C. § 3632(b).  Mr. Arredondo himself supplied his PATTERN risk assessment which shows, apparently, that he is in the lowest risk category.  Docket No. 12-1.

The court finds that Mr. Arredondo's petition challenges the BOP's official policy interpreting the FSA rather than a factual challenge to how his FSA credits are being calculated individually.  See Docket Nos. 1, 5 & 12.  Specifically, he alleges the FSA allows eligible inmates to accrue FSA credits to be applied to shorten their sentences to allow them to be released to prerelease custody, but that the BOP is interpreting the FSA not to allow application of FSA credits toward prerelease custody in cases like his where he does not have a term of supervised release following his term of incarceration.  Id.  Because

he is challenging an official policy, exhaustion of administrative remedies may not required.  Ward, 678 F.3d at 1045-46; Taylor, 127 F.3d at 477.

Additionally, Mr. Arredondo argues he will be subject to irreparable harm if his case is dismissed without prejudice in order to exhaust administrative remedies.  He argues that, if his interpretation of the law is correct, he must enroll in the RDAP[2] program in June 2025.  Docket No. 12 at 2-3.  But, because enrollment in RDAP is decided based upon a prisoner's "outdate," and because the BOP is allegedly miscalculating his "outdate" by misinterpreting the law, Mr. Arredondo asserts that he will be placed in RDAP too late if the merits of his case are not decided in time for him to enroll in RDAP in June. Id.  Accordingly, if he "prevails" ultimately after having had to exhaust administrative remedies, he will not have time to finish the RDAP program or may even not be allowed to enroll in it because there will not be sufficient time. Id.  Mr. Arredondo states his sentencing judge recommended he participate in RDAP and Mr. Arredondo evidently wishes to do so.  Id.

The court does not now decide whether Mr. Arredondo was required to exhaust his administrative remedies.  Rather, the court first wishes to hear respondent's explanation of the merits of Mr. Arredondo's claim, especially the assertion contained in respondent's declaration that the absence of a term of supervised release in Mr. Arredondo's sentence prevents him from applying FSA credits to reduce his sentence towards early release.  See Docket No. 10 at 3, ¶ 12.

---

[2] RDAP stands for Residential Drug Abuse Treatment Program.

6

**CONCLUSION**

Based on the foregoing discussion, the court hereby

ORDERS that respondent file a brief and any supporting documents deemed necessary to address the merits of Mr. Arredondo's claim as articulated in Docket Nos. 1, 5, & 12. **<u>Respondent's brief shall be filed no later than May 15, 2025.</u>** Given the time frame Mr. Arredondo has stated is necessary for enrollment in RDAP, respondent should prioritize the filing of this brief and should not expect any extensions of the deadline for filing unless extreme circumstances arise.

DATED May 1, 2025.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge